## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY BESSINGER, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-00452-SH |
| CIMAREX ENERGY CO. and COTERRA ENERGY, INC., | ) ) ) |
|     Defendants. | ) ) |

### OPINION AND ORDER

Before the Court is Plaintiff's motion for discovery in a case asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 *et seq.* (ECF No. 31.) Plaintiff argues that discovery is necessary to complete the record and that additional extra-record discovery is appropriate due to a conflict of interest and procedural irregularities. Defendants, meanwhile, assert no additional discovery is appropriate, but have agreed to provide some of the requested information. This agreement moots a portion of Plaintiff's motion. As for the rest of the motion, the Court finds that discovery is not appropriate to complete the record and that the extra-record discovery sought is not proportional to the needs of the case. Plaintiff's motion will be denied.

### Factual Background

Plaintiff Jay Bessinger ("Bessinger") is a former employee of Defendant Cimarex Energy Co. ("Cimarex"). (Compl. ¶ 7.[1]) During his employment, Cimarex had in place a severance plan that provided separation benefits to plan participants in certain circumstances where a participant was terminated following a change in control—including

---

[1] The current operative complaint is the Second Amended Complaint (ECF No. 23) (the "Complaint").

when an employee left for "Good Reason." (*Id.* ¶¶ 8, 13; *see also* AR. 131–153[2] (the latest "Severance Plan").) Cimarex was the named fiduciary of the plan, administering its terms through the company's vice president of human resources, or the "Plan Administrator." (AR. 143 § 8.4.) The plan was also unfunded, and all payments made pursuant to the plan were drawn from the company's general funds. (AR. 145 § 8.7.)

According to the Complaint, in May 2021, Cimarex announced a change in control via an all-stock merger with Cabot Oil & Gas Corporation, forming Defendant Coterra Energy, Inc. ("Coterra"). (Compl. ¶¶ 9, 14.) The headquarters of the new company would be in Houston, Texas, and the merger would close on October 1, 2021. (*Id.* ¶¶ 14–15.) Bessinger alleges he was entitled to benefits as a plan participant who terminated his employment for Good Reason after this change in control, but he was denied benefits. (*Id.* ¶¶ 16–17, 19, 21–22.) Bessinger alleges he was treated differently under the Severance Plan than his coworkers. (*Id.* ¶¶ 20–21.)

## The Current Motion

Bessinger now seeks discovery on two grounds. First, Bessinger argues the administrative record is incomplete because his denial of benefits referenced facts not found in the current record.[3] (ECF No. 31 at 2–4.[4]) Second, he argues there is a conflict

---

[2] The current administrative record (ECF No. 32) will be referred to as "AR."

[3] Bessinger also argues Defendants should be ordered to certify that the administrative record is complete and accurate. (ECF No. 31 at 4.) With their response, Defendants have provided an affidavit from Coterra's plan administrator averring that "[a]ll records compiled by the Cimarex Plan Administrator and Appeals Committee, which were relied upon as sufficient for addressing and resolving both the initial claim for severance benefits of Jay Bessinger and [his] subsequent appeal, have been retained . . . and have been submitted to the Court." (ECF No. 34-1 ¶ 5.) In reply, Bessinger does not dispute the adequacy of this certification. (*See generally* ECF No. 35.)

[4] Unless otherwise indicated, page numbers refer to those in the ECF header.

of interest arising from Cimarex's dual role as both payor on the plan and Plan Administrator, which is further evidenced through alleged "procedural irregularities" in the handling of his claim. (*Id.* at 4–7.) Because of this, Bessinger argues he is entitled to extra-record discovery concerning the conflict of interest and its role in his denial. (*Id.* at 4.)

Defendants counter that no discovery is warranted, either to complete the record or to explore the admitted conflict of interest. (ECF No. 34 at 1–8.) Defendants further argue that the proposed discovery requests are overly broad and seek irrelevant information. (*Id.* at 8–9.) Nevertheless, Defendant state that they will "voluntarily respond" to Interrogatory Nos. 2 and 4–8, and Request for Production Nos. 4–5. (*Id.* at 9 n.4.) Bessinger agrees this resolves his motion as to those requests. (ECF No. 35 at 1.)

The Court, therefore, will consider Bessinger's motion as it relates to the remaining discovery requests.

## Analysis

### I.    Standard of Review

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotations and citations omitted). As such, plan participants "have the right to federal court review of benefit denials and terminations under ERISA." *Evans v. United Healthcare of Okla. Inc.*, No. 20-CV-0670-CVE-SH, 2022 WL 319973, at *5 (N.D. Okla. Feb. 2, 2022). This review is for an abuse of discretion "where, as here, the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the

3

plan . . . ."[5] *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) (internal quotations omitted); *see also LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) ("Where the plan gives the administrator discretionary authority," the court asks "only whether the denial of benefits was arbitrary and capricious" (internal quotations omitted)).[6]  Under this standard, "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith." *Id.* (quoting *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 826 (10th Cir. 2008)).

When making this decision, the Court is "limited to the 'administrative record'—the materials compiled by the administrator in the course of making his decision."[7] *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197, 1201 (10th Cir. 2002).  That is, Tenth Circuit "case law prohibits courts from considering materials outside the administrative record where the extra-record materials . . . relate to a claimant's eligibility for benefits." *Murphy*, 619 F.3d at 1162.  This "makes sense," as both "a plan participant and an administrator have a fair opportunity to include in the record materials related to the participant's eligibility for benefits" and a "plan participant 'is not entitled to a second chance to prove his'"

---

[5] Under the terms of Bessinger's plan, the administrator had "full and complete discretionary authority to administer, to construe, and to interpret the Plan, to decide all questions of eligibility, to determine the amount, manner and time of payment, and to make all other determinations deemed necessary or advisable for the Plan."  (AR. 143 § 8.5.)

[6] The Tenth Circuit "treats the abuse-of-discretion standard and the arbitrary-and-capricious standard as interchangeable in [the ERISA] context and applies an arbitrary and capricious standard to a plan administrator's actions." *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231–32 (10th Cir. 2012) (internal quotations omitted).

[7] "This includes materials submitted to the plan administrator before it issued its final denial, and that the plan administrator considered in evaluating the claimant's appeal." *Crawford v. Guar. State Bank & Tr. Co.*, No. 22-2542-JAR-GEB, 2024 WL 2700668, at *5 (D. Kan. May 24, 2024).

eligibility. *Id.* at 1159 (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992)).

Yet, the prohibition does not necessarily extend to cases where a plan administrator operates under "a dual role conflict of interest," *i.e.*, where it both insures and administers the plan. *Id.* at 1157. The Tenth Circuit instructs that "the district court must always weigh the conflict of interest in its abuse of discretion analysis," allocating "the conflict more or less weight depending on its seriousness." *Id.* Thus, the "general restriction" on consideration of extra-record material "does not conclusively prohibit a district court from considering . . . materials related to an administrator's dual role conflict of interest," and "discovery related to the scope and impact of a dual role conflict of interest may, at times, be appropriate . . . ." *Id.* at 1162; *see also id.* at 1160 (including cases involving "procedural irregularities" in the discussion).

In determining the scope of extra-record discovery, the Court looks to "the familiar standards of Federal Rule of Civil Procedure 26(b)." *Id.* at 1162. However, "neither a claimant nor an administrator should be allowed to . . . engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim," and "discovery related to a conflict of interest may often prove inappropriate."[8] *Id.* at 1162–63. The Tenth Circuit emphasizes that

> district courts will often need to account for several factors that will militate against broad discovery. First, while a district court must always bear in mind that ERISA seeks a fair and informed resolution of claims, ERISA also seeks to ensure a speedy, inexpensive, and efficient resolution of those claims. . . . Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition. . . .

---

[8] This is because "Rule 26(b) will not permit unlimited discovery" and "protects against, *inter alia*, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests." *Id.* at 1163.

5

> Second, in determining whether a discovery request is overly costly or burdensome in light of its benefits, the district court will need to consider the necessity of discovery. For example, the benefit of allowing detailed discovery related to the administrator's financial interest in the claim will often be outweighed by its burdens and costs because the inherent dual role conflict makes that financial interest obvious or the substantive evidence supporting denial of a claim is so one-sided that the result would not change even giving full weight to the alleged conflict. Similarly, a district court may be able to evaluate the effect of a conflict of interest on an administrator by examining the thoroughness of the administrator's review, which can be evaluated based on the administrative record.

*Id.* at 1163 (internal citations and footnote omitted). In light of these considerations, the "exception to the general prohibition on discovery . . . does not function as a green light . . . whenever a dual-role conflict exists." *Harper v. Aetna Life Ins. Co.*, No. 18-CV-668-CVE-JFJ, 2019 WL 4015891, at *3 (N.D. Okla. Aug. 26, 2019) (internal quotations omitted). Rather, considering the Rule 26(b) standards, Plaintiff bears the burden of showing discovery is proper.[9] *Murphy*, 619 F.3d at 1163.

## II.   Completeness of the Administrative Record

First, the Court rejects Bessinger's argument that discovery is necessary to complete the record.

Bessinger argues the record is incomplete because "the decision of the Administrator and Appeal[s] Committee reference information not contained in the record supported by Defendant." (ECF No. 31 at 2.) More specifically, Bessinger points to facts referenced in the denial letter from the appeals committee and claims he "must

---

[9] The Court recognizes that, when Rule 26 was most recently amended, the Advisory Committee noted that these changes did "not place on the party seeking discovery the burden of addressing all proportionality considerations" and went on to discuss the burdens <u>all</u> parties share in the Rule 26(b) analysis. Fed. R. Civ. P. 26, advisory ctte.'s note to 2015 am. Given the considerations outlined by the Tenth Circuit in *Murphy*, however, the undersigned does not find that the 2015 amendments call into question *Murphy*'s allocation of burden on the party seeking extra-record discovery.

be allowed discovery to identify the full extent of the actual record considered" during his claims process. (*Id.* at 2–4 (citing AR. 1–3, 82.) The Court disagrees.

While some of the cited facts appear to lack record support, Bessinger has failed to show that this alleged incompleteness justifies discovery in ERISA cases reviewed under an abuse of discretion standard. *But cf. Erickson v. Lincoln Nat'l Life Ins. Co.*, No. 111-CV-00394-PAB-BNB, 2011 WL 13127141, at *1 (D. Colo. Oct. 13, 2011) (limited "discovery may be appropriate on the issues of . . . whether the entire administrative record has been provided to the court").[10] Moreover, Defendants have affirmed that all records "which were relied upon as sufficient for addressing and resolving" Bessinger's claims have been submitted to the Court. (ECF No. 34-1.) There may be additional facts in existence, but Defendants will be precluded from arguing reliance on them.

In any event, where the record is incomplete, it is more appropriate for the Court to remand to the plan administrator for further consideration than to attempt to reassemble the administrative record itself. This is because "ERISA's 'interests are not served by federal court review of an incomplete administrative record'"; where procedural irregularities result in an incomplete record, "the appropriate remedy is remand." *Evans*, 2022 WL 319973, at *5 (quoting *Messick v. McKesson Corp.*, 640 F. App'x 796, 799 (10th Cir. 2016) (unpublished)); *see also K.Z. v. United Healthcare Ins. Co.*, No. 2:21-CV-00206-DBB, 2024 WL 664801, at *25 (D. Utah Feb. 16, 2024) (same). *Cf. also Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1121 (10th Cir. 2006) (remand appropriate remedy where

---

[10] For this proposition, the *Erickson* court cited *Carberry v. Metro. Life Ins. Co.*, No. 09-CV-02512-DME-BNB, 2010 WL 1435543, at *3 (D. Colo. Apr. 9, 2010), which noted that in "addition to the discovery directed to the conflict issue," an interrogatory seeking "information concerning the authenticity of materials contained in the administrative record" was relevant and appropriate. *Id.* at *3 n.1.

administrator's decision so "one-sided" the court was "unable to determine the substantiality of the evidence supporting" the benefits determination). Bessinger has neither made nor supported a request to remand at this juncture.

Any evidentiary deficiencies in the record will go toward the Court's analysis of whether the Plan Administrator abused its discretion in denying Bessinger's request for benefits. *See Williams v. Metro. Life Ins. Co.*, 459 F. App'x 719, 723 (10th Cir. 2012) (unpublished) ("An administrator abuses its discretion when its decision is not supported by substantial evidence.");[11] *see also Rekstad*, 451 F.3d at 1119 ("Indicia of an arbitrary and capricious decision include, *inter alia*, lack of substantial evidence.").

## III. Extra-Record Discovery

Second, Bessinger argues extra-record discovery is necessary because Cimarex—as administrator and payor on the plan—was inherently conflicted. (ECF No. 31 at 4–7.) Bessinger points to facts discussed earlier in his brief, which he argues were "not contained in the Plan," as evidence of this bias. (*Id.* at 5.) Bessinger also argues the "denial of Plaintiff's severance benefits is fraught with procedural irregularities that undermine the integrity of the administrative process and highlight potential bias." (*Id.* at 6.) These procedural irregularities, according to Bessinger, necessitate "discovery to determine whether the Court will apply a de novo standard of review" and to further explore the plan administrator's bias. (*Id.* at 6–7.)

### A. Administrator's Conflict of Interest

Here, Defendants acknowledge the inherent conflict in Cimarex's role as both administrator and payor. The conflict is obvious on the face of the plan. (*Compare*

---

[11] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

AR. 143 § 8.4 *with* AR. 145 § 8.7.) This very obviousness lowers the necessity for any extra-record discovery. Moreover, Defendants have already agreed to respond to many of Bessinger's requests.

Considering the remaining requests, the Court finds they are not proportional to the needs of the case. For example, in the remaining interrogatories, Bessinger requests all communications between the Plan Administrator, appeals committee, and a variety of personnel concerning "the designation of transition employees, their required employment timelines . . ., conditions for their early termination, and the effect on their eligibility for severance benefits under the Plan." (ECF No. 31-1 at 5 (Interrogatory No. 1).) Bessinger also requests details relating to topics discussed and materials reviewed in all meetings referenced in his denial letter. (*Id.* (Interrogatory No. 3).) The remaining requests for production likewise ask Defendants to produce all documents and all communications on a number of topics, including transition employees, meetings referenced in the denial letter, severance decisions and workload reductions, benefits determinations for Tulsa accounting employees, and plan funding in general. (*Id.* at 6–7.) These go far beyond what is necessary for the Court to weigh the seriousness of the conflict of interest in its abuse-of-discretion review.

### B.   Procedural Irregularities

Bessinger's claim of procedural irregularities does not alter the Court's analysis.

Bessinger is correct that procedural irregularities in an administrator's handling of a claim may result in *de novo* review—at least where the plan administrator failed to make a timely decision. *LaAsmar*, 605 F.3d at 796–99 (finding administrator does not act within its discretion when it decides a claim substantially outside the applicable time period). But Bessinger does not allege this sort of irregularity.

Instead, Bessinger complains of the explanation provided for his denial and its lack of support in the record. This is not the sort of time-based procedural irregularity found to deprive the administrator's decision of its discretionary nature in *LaAsmar*. Instead, this is a complaint that the appeal failed to provide a full and fair review of his claim.[12] Cases addressing such an alleged failure "apply the arbitrary-and-capricious standard of review, and address whether the plan administrator's failure to provide sufficient notice of the reasons for denial, or the evidence upon which it relied, meets the standard." *Crawford*, 2024 WL 2700668, at *2 (collecting cases).

As such, Bessinger's claim of procedural irregularities does not support additional discovery.

## Conclusion

IT IS THEREFORE ORDERED that *Plaintiff's Motion for Additional Discovery* (ECF No. 31) is DENIED AS MOOT as to Interrogatory Nos. 2 and 4–8 and Request for Production Nos. 4–5. The remainder of the motion is DENIED.

ORDERED this 3rd day of January, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[12] "Every ERISA benefit plan must have a procedure giving claimants 'a reasonable opportunity to appeal . . . and under which there will be a full and fair review of the claim and the adverse benefit determination.'" *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1153 (10th Cir. 2009) (quoting 29 C.F.R. § 2560.503–1(h)(1)). Such review must take into account "all comments, documents, records, and other information submitted by the claimant." *Id.* (quoting 29 C.F.R. § 2560.503–1(h)(2)(iv)). Similarly, a full and fair review includes "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *D. K. v. United Behav. Health*, 67 F.4th 1224, 1236 (10th Cir. 2023).